IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT MOORE, III, | ) | Case No.  1:18 CV 1837 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE JAMES S. GWIN |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| LASHANN EPPINGER, Warden, | ) | THOMAS M. PARKER |
| | ) | |
| Respondent. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |

## I.    Introduction

Petitioner Robert Moore, III filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions and sentences in *State v. Moore,* Case No. CR 521078 and *State v. Moore*, Case No. CR 525878.[1]  ECF Doc. 1, ECF Doc. 12-1 at 125.  Respondent Warden, LaShann Eppinger[2], filed an answer/return of writ.  ECF Doc. 12.  Moore filed a traverse.  ECF Doc. 13.  Moore is currently incarcerated at Grafton Correctional Institution.[3]

Because Moore's claims are all barred by AEDPA's statute of limitation, procedurally defaulted, noncognizable and/or lacking in merit, I recommend that his claims be DISMISSED and his petition for writ of habeas corpus be DENIED.

---

[1]  The matter is before the undersigned by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Moore's petition or other case-dispositive motions.
[2] According to the Ohio Department of Rehabilitation and Correction's website, the correct spelling of respondent's name is LaShann Eppinger.
[3]  https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A572298 (last visited 12/05/19).

II.     **Procedural History**

A.     **State Convictions and Direct Appeals**

In January 2009, a Cuyahoga County grand jury indicted Moore, as one of several defendants, charging him with two counts of possession of drugs in violation of Ohio Rev. Code § 2925.11(A) with firearm and forfeiture specifications (Counts One and Four), two counts of drug trafficking in violation of Ohio Rev. Code § 2925.03(A)(2) with firearm and forfeiture specifications (Counts Two and Five), one count of carrying a concealed weapon in violation of Ohio Rev. Code § 2923.12(A)(2) with a forfeiture specification (Count Three), and one count of possessing criminal tools in violation of Ohio Rev. Code § 2923.24(A) with forfeiture specifications (Count Seven).  (Case No. 09-521078).  ECF Doc. 12-1 at 7-31.  Moore filed several suppression motions, which the trial court denied after an evidentiary hearing.  On July 9, 2009, a jury found Moore guilty of all the charges and specifications against him.  ECF Doc. 12-1 at 34.

While Case No. 09-521078 was pending, the grand jury issued another indictment, case number CR-09-525878, charging Moore with two counts of trafficking in violation of Ohio Rev. Code § 2925.03(A)(1) and (2) with firearm specifications (Counts One and Two) and one count of drug possession in violation of Ohio Rev. Code. § 2925.11(A) (Count Three).  ECF Doc. 12-1 at 46.  On August 14, 2009, following the verdict in CR 09-521078 but before sentencing, Moore entered into a plea agreement with the state to resolve both cases.  Moore agreed to plead guilty to drug trafficking in violation of Ohio Rev. Code § 2925.03(A)(1) as charged in Count One of the indictment in CR-525878 and waive any discovery and suppression issues and appellate rights in that case.  He also agreed to waive his appellate rights on any suppression or trial issues in CR-521078 and to forfeit vehicles and money.  In exchange, the state agreed to dismiss

2

Counts Two and Three in CR-525878 and to recommend an agreed aggregate sentence of 13 years in prison for both cases.

On August 14, 2009, the trial court accepted Moore's plea in CR-525878 and sentenced him to serve agreed, aggregate prison terms of nine-years (ECF Doc. 12-1 at 49), to run concurrent with the agreed, aggregate prison terms of 13-years imposed in CR-521078. ECF Doc. 12-1 at 35.

On September 14, 2009, Moore filed a notice of appeal in the Ohio Court of Appeals on both of his cases. On September 21, 2009, the court of appeals dismissed, *sua sponte*, Moore's appeals because he had waived his appellate rights. ECF Doc. 12-1 at 40, 298. Moore did not appeal to the Ohio Supreme Court.

On September 3, 2010, Moore filed a "motion to vacate and void sentence" challenging the court's waiver of mandatory fines. ECF Doc. 12-1 at 55, 298. The trial court denied Moore's motion. ECF Doc. 12-1 at 64. The Ohio Court of Appeals reversed, in part, determining that only the waiver of fines was void; the other parts of the trial court's judgment and sentences were affirmed. Resentencing was limited to the mandatory fine issue. *State v. Moore,* 8th Dist. Cuyahoga Nos. 96111 and 96112, 2011-Ohio-4246 ¶ 18. In May 2012, the Ohio Supreme Court affirmed the court of appeals' decision. *State v. Moore,* 135 Ohio St.3d 151, 2012-Ohio-5479, 985 N.E.2d 432; *See also, State v. Moore,* 8th Dist. Nos. 100483 and 100484, 2014 Ohio App. LEXIS 5503, 2014-Ohio-5682 ¶ 15.

### B.    Post-Conviction Motions

In September 2011, Moore filed two motions in CR-525878 attempting to withdraw his guilty plea. In October 2011, he filed a "motion to amend defendant's timely presentencing motion to withdraw guilty plea." Moore argued that he had been placed in double jeopardy

because the firearm specifications – for which he was given separate sentences – were the same under both indictments.  He also moved to vacate and void his judgment of conviction, contending that he should not have been sentenced for possessing criminal tools in CR-521078 because the jury verdict forms showed that he was found not guilty.  *State v. Moore,* 8th Dist. Nos. 100483 and 100484, 2014 Ohio App. LEXIS 5503, 2014-Ohio-5682 ¶ 10.

On November 8, 2011, the trial court filed two journal entries in CR-521078.  The first journal entry denied Moore's motion to withdraw his guilty plea because it was barred by *res judicata*: he could have raised the issues addressed in his motion on direct appeal.  The second journal entry denied Moore's motion to vacate his conviction because he did not present any evidence supporting his claim that the jury found him not guilty of possession of criminal tools. *Id.* at ¶ 11.  Moore appealed these orders under both cases and both were denied on procedural grounds.  *Id*. at ¶ 12.

In November 2011, Moore filed another post-judgment motion, a "motion for acquittal pursuant to Crim R. 29(C) after verdict or discharge of the jury."  He argued that the jury verdict forms were improperly renumbered to his prejudice because Count 7 of the indictment was changed to Count 6 on the jury verdict forms even though Count 6 of the indictment related to a co-defendant.  *Id*. ¶ 13.  The trial court denied his motion as barred by *res judicata* because it could have been raised on direct appeal.  The Ohio Court of Appeals affirmed the trial court's decision, because Moore's challenge to the jury verdict forms was untimely and because the purpose of renumbering the verdict forms was to assist the jurors and not to prejudice Moore.  *Id.* at ¶ 14.

Moore also filed a motion to withdraw his plea and a motion for a hearing to determine allied offenses.  Moore asserted that his plea was not made knowingly, intelligently and

voluntarily because the offenses he was indicted for in CR-525878 were allied to the offenses of which he was convicted in CR-521078, and he was not advised that proceeding on two indictments violated his right against double jeopardy.  *Id.* at ¶ 16.  The trial court heard oral arguments from Moore's counsel regarding his *pro se* motions at a resentencing hearing in March 2013, but continued the hearing because the state had not yet responded to the arguments made in the motions.  *Id.* at ¶ 17

In August 2013, the trial court resentenced Moore and waived the mandatory fines pursuant to the court of appeals' decision (which had been affirmed by the Ohio Supreme Court).  The court also held a hearing on Moore's motion to withdraw his plea.  The court decided that the issue of allied offenses could only be raised on direct appeal and that Moore had waived his appellate rights.  The court also held that Moore had not demonstrated a manifest injustice required by Ohio Crim. R. 32 in order to withdraw a plea.  The court cited trial counsel's testimony that he had not raised the issues of double jeopardy and allied offenses because he did not believe those issues existed at the time of the plea.  *Id.* at ¶¶ 18-20.

Moore, through counsel, filed a notice of appeal on October 3, 2013.  ECF Doc. 12-1 at 206.  His appellate brief asserted one assignment of error – that his guilty plea "was neither knowing nor intelligent because it was prompted by misinformation about the applicable law and the proper sentence that could be imposed."  ECF Doc. 12-1 at 214.  Moore also moved to file *pro se* supplemental assignments of error.  In his *pro se* filing, Moore asserted that: 1) the trial court abused its discretion when it sentenced him on "duplicitous indictments which violate the double jeopardy clause;" 2) that the prosecutor committed prosecutorial misconduct when she questioned Officer Todd Clark about evidence pertaining to a different case; and 3) he was denied effective assistance of counsel in violation of the Sixth Amendment based on a claim that

trial counsel should have moved for a mistrial when the prosecutor presented evidence relating to an unindicted charge to the court. ECF 12-1 at 249, 253, 255. The state responded to both Moore's original brief and his *pro se* supplemental brief. ECF Doc. 12-1 at 260, 275. The court of appeals affirmed the trial court's judgment on December 24, 2014. ECF Doc. 12-1 at 294. On April 17, 2015, Moore filed a notice of appeal and motion to file a delayed appeal with the Ohio Supreme Court. ECF Doc. 12-1 at 316, 318. On June 3, 2015, the Ohio Supreme Court denied Moore's motion to file a delayed appeal. ECF Doc. 12-1 at 321.

### C. Civil Actions

Moore also filed two civil actions – one against the prosecutor and one against the trial judge in CR-521078. Moore's case for declaratory judgment and injunctive relief against the prosecutor was filed on March 4, 2016. ECF Doc. 12-1 at 322. The trial court granted the state's motion to dismiss and Moore appealed. ECF Doc. 12-1 at 386. Moore raised several assignments of error, including the following error related to his habeas claims:

Assignment of Error II:

The defendant, Deborah Naiman's, forfeiture waiver through appellant, Moore's, guilty plea was error because no plea-agreement was ever signed nor executed by the defendant, Naiman, nor did the appellant, Moore, signed any plea any plea-agreement agreeing to the forfeiture of his money property.

ECF Doc. 12-1 at 386. The Ohio Court of Appeals affirmed the trial court's dismissal on March 30, 2017. ECF Doc. 12-1 at 474. The court held that Moore's Assignment of Error II raised issues outside the scope of appeal. ECF Doc. 12-1 at 483. Moore appealed to the Ohio Supreme Court, but it declined review on September 13, 2017. ECF Doc. 12-1 at 507.

Moore's case for declaratory judgment and injunctive relief against the trial judge was filed on March 18, 2016. ECF Doc. 12-1 at 508. Moore asserted six assignments of error, including the following summarized assignment related to his habeas claims:

Assignment of Error VI:

Defendant Judge Russo erred when he imposed a thirteen year sentence at the conclusion of sentencing and prejudicial error was committed when Judge Russo ran the Crim. R. 11 sentence concurrent with the jury trial sentence and defendant, Judge Russo, committed harmful error for making a plea agreement with state prosecutor to let the jurors' guilty verdict trial become a part of the appellant's Crim. R. 11 trial was harmful error and both convictions and sentences must be vacated.

ECF Doc. 12-1 at 578.  The trial court dismissed Moore's case against Judge Russo as an improper attempt to collaterally attack his criminal conviction.  The Ohio Court of Appeals affirmed the trial court's dismissal.  ECF Doc. 12-1 at 700.  Moore appealed to the Ohio Supreme Court, which declined to exercise jurisdiction on May 9, 2018.  ECF Doc. 12-1 at 723.

## III.    Federal Habeas Corpus Petition

On August 15, 2018, Moore placed his *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the prison mailing system.  ECF Doc. 1 at 18.  Moore asserts four grounds for relief.

**GROUND ONE:**  Petitioner's guilty plea was neither knowing and intelligent/Ineffective assistance of counsel/Double Jeopardy arose when state filed a second indictment in violation of the fifth amendment of the United States Constitution.

**Supporting facts:**  Counsel was ineffective for his failure to file a motion to dismiss the prosecutor's second filed indictment with drug-related offenses, because the prosecutor informed petitioner that if he elects to go to trial for the 1st indictment prosecutor informed petitioner that she would file a 2nd indictment against petitioner, the petitioner had a right to a jury trial as provided for under 6th amendment of the U.S. Constitution, and when petitioner went to trial by jury and when the jurors returned a guilty verdict, the prosecutor filed a second indictment against petitioner, just because petitioner exercised his 6th Amendment Rights to a jury trial.  Petitioner's guilty pleas was neither knowing and intelligent, when counsel gave him misinformation about – the applicable law and the proper sentence that could be imposed.  Counsel also proved to be ineffective when counsel had failed to answer this Court's complaint concerning the currency – seized by the state prosecutor, because if counsel would have informed petitioner that this – Court had filed a complaint against him, petitioner would have answered this Court's complaint - counsel proved to be ineffective when counsel

had personal knowledge that a complaint hat been filed against the petitioner, because counsel was hired by petitioner when the petitioner had been arrested and going to trial from the state's 1st filed indictment, and at no time – counsel answer the complaint nor did he inform the petitioner that a complaint was filed against by this Court to show interest in the currency.  The trial court and prosecutor violated petitioner's fifth amendment when petitioner was placed in double jeopardy when the prosecutor filed the second indictment for drug-related offenses when the same prosecutor used the same evidence produced at the 1st trial.  ECF Doc. 1 at 6.

**GROUND TWO:**  Prosecutor's judgment of forfeiture was contrary to law, because no plea agreement was ever signed, and forfeiture hearing was not held within 30 days of the plea agreement as required by law.

**Supporting facts:**  Prosecutor's forfeiture mandate was contrary to law, because the prosecutor did not hold a forfeiture hearing with 30 days as required by law, nor did the petitioner sign a – plea agreement to forfeiture his currency and property to the state, nor does the state have any documentations with the petitioner's signature on it agreeing to the forfeiture of his money during the arrest, nor is it any documentations that petitioner agreed to the state's forfeiture of his currency found on him during the arrest and the currency and property – seized from his home and the state's forfeiture waiver was contrary to law, because the forfeiture hearing was not held within 30 days of the entry of petitioner's guilty plea as to the underlying offense as required by law.  ECF Doc. 1 at 8.

**GROUND THREE:**  Trial Court's 13 year sentence was contrary to law, because the trial court combined the jury trial conviction and sentence became a part of petitioner's Crim. R. 11 trial, because a trial judge cannot become involved with a plea agreement.

**Supporting facts:**   A trial court cannot not become involved with a plea agreement a trial court could either accept the agreement or not, and the state agreement was for 13 years, however the trial court sentence petitioner to 9 years, which was not the sentence the state and petitioner agreed to, but the trial court created a hybrid sentence when trial court ran the Crim. R. 11 sentence with the jury trial sentence, and the trial court erred for becoming involved with the state to determine what sentence the trial court should impose for both convictions in order to meet with the state's agreed to sentence for petitioner's guilty plea and the trial court's sentence of 13 years was contrary to law, because a criminal defendant cannot serve hybrid sentence, because a defendant could only serve a single conviction , unless he commits another offense while out on bail.  Here in this case the petitioner was punished twice by the state just for exercising his rights to have a jury trial, and when petitioner elected to go to trial on the first indictment and was found guilty, the state kept its promise and filed a second indictment, charging petitioner with other drug-related offenses just for him

exercising his sixth amendment rights to have a trial by jury, which created the trial court to impose hybrid sentences on the petitioner, and if it was not for the state's prosecutorial misconduct the petitioner would have never been convicted on a second indictment.

Petitioner's guilty plea was neither knowing nor intelligent, because of Counsel's misinformation about the applicable law and the proper sentences that could be imposed on the petitioner in a hybrid conviction and sentence.

Counsel also proved ineffective when counsel failed to file a motion to dismiss the state's filed second indictment, because the second indictment was filed under a violation of petitioner exercising his sixth amendment rights to have a trial by jury involving the state's first indictment, and if counsel would have filed a motion to dismiss the motion would have prevailed, because the second indictment only came after the state had told the petitioner that if he takes the first indictment to trial, the state would file a second indictment, and when the jurors returned a guilty verdict from the first indictment involving case number CR-09-521078 the state did as promised and filed a second indictment charging the petitioner with other drug-related offenses, in which the drug-related offenses came from the first indictment, because petitioner never made bail to commit another offense for the state to file a second indictment, and the only reasons the prosecutor filed the second indictment was because the petitioner had elected to go to trial on the state's 1st filed indictment, which every criminal defendant in the state of Ohio has a sixth amendment right under the United States Constitution to have a trial by jury if the defendant choose not to have a jury trial, in this case prosecutorial misconduct arose when the state filed a second indictment against the petitioner when petitioner elected to go to trial on the state's first filed indictment, and this misconduct caused prejudice to exist and also – caused the trial court to impose hybrid sentences just because the petitioner had elected to go to trial on the state's first indictment.  ECF Doc. 1 at 9-10.

**GROUND FOUR:**  State's second indictment for drug trafficking violates the double jeopardy clause of the Fifth Amendment of the United States Constitution, because petitioner has already been convicted of drug trafficking from the first state's indictment.  Counsel was also ineffective for not filing a motion to dismiss the second indictment.

**Supporting facts:**  Double jeopardy existed when the state produced another indictment for drug trafficking, when petitioner had already been convicted by jury for drug trafficking and after the verdict was reached state and his attorney told petitioner that if he do not plead guilty to the second indictment under drug trafficking and the same firearm specification the petitioner would get 20 years if petitioner does no comply with the state's plea "deal."  Double jeopardy also existed when the trial court sentenced petitioner during the plea hearing to 9 years and during the jury trial sentencing the trial court imposed the same 9 years on the petitioner that he had already imposed at the plea hearing only to run that sentence

9

current, still convicting petitioner twice and then sentencing petitioner to another 9 years for the jury trial conviction, in this case the 13 years should have been imposed in the guilty plea judgment entry, and the 9 years for the jury trial should have been imposed in the jury trial sentencing entry and the petitioner was not convicted by due process of law of the 14th amendment. ECF Doc. 1 at 12.

## IV.    Law and Analysis

### A.    Factual Background

We begin with a recitation of the factual findings of the Ohio courts.  The Ohio Court of

Appeals summarized the relevant facts as follows:

> {¶ 2}  In 2009, Moore was charged in a multi-count indictment under case number CR-09-521078 with several codefendants relating to various drug-related activities that occurred between February 13 and 15, 2009.
>
> {¶ 3}  During the course of the case, Moore filed multiple suppression motions, which were denied after an evidentiary hearing.  Approximately a week or two prior to trial, defense counsel was made aware that another indictment was possibly going to be filed against Moore stemming from a controlled buy from a confidential informant that also occurred on February 13, 2009. (Tr.1705-1706.)  It was discussed between trial counsel and the prosecutor that if Moore went to trial on the pending case, this second indictment would be filed against Moore.  (Tr. 1706.)  The trial court indicated to Moore that given the nature of the two cases and in the event of guilty verdicts in both cases, the court would impose at the very least an aggregate 18-year sentence. (Tr.12-18.)  Moore exercised his right to go to trial, and the state filed the second indictment — case number CR-09-525878, charging him with other drug-related offenses.
>
> {¶ 4}  Following a week-long jury trial, Moore was found guilty in CR-521078 of all charges and was facing over 16 years in prison.  Following the verdict but before sentencing, a plea deal was reached in case number CR-525878 that also involved an agreed sentence in CR-521078.  The agreement provided that Moore would plead guilty to drug trafficking in violation of R.C. 2925.03(A)(1), as charged in Count 1 of the indictment in CR-525878 and waive any discovery and suppression issues, and appellate rights in that case. (Tr. 1610, 1628).  Moore would also waive his appellate rights on any suppression or trial issues in CR-521078 (Tr. 1610) and agree to forfeit vehicles and money.  (Tr. 1610).  In exchange, the state would nolle Counts 2 and 3 in CR-525878 and an agreed total sentence of 13 years in prison would be imposed for both cases.

{¶ 5}  During the beginning of the plea colloquy, the trial court asked Moore whether he was threatened, promised, forced, or induced by anyone to accept the plea. (Tr. 1614).  Moore responded:

> No. I was told by [my attorney] and basically by the prosecutor for me to get my plea I have to give up my rights, the money that they took from me, drugs.  If I don't, I'm going to get like 20 years, 20 some years, so basically I have to give up everything.  That's what I was told to do.

{¶ 6}  The trial court then explained that the court never indicated it was imposing a 20-year sentence.  The court reminded Moore of the conversation they had prior to the start of trial about the potential sentence he was facing — a minimum of 18-years total on both cases.  (Tr. 12-18; 1614-1616).  The court then reiterated that it never discussed with anyone a 20-year sentence.  Moore stated he understood the court's explanation and agreed about the earlier conversation.

{¶ 7}  The trial court accepted Moore's plea as presented in case number CR-525878 and sentenced him to an agreed sentence of nine-years incarceration to run concurrent with the agreed 13-year sentence imposed in case number CR-521078.  As part of these agreed sentences, Moore agreed to forfeiture of vehicles and money, and waived his appellate rights regarding discovery, suppression, and any issues raised at trial.

{¶ 8}  In September 2009, Moore filed timely notices of appeal in both cases. This court subsequently dismissed the appeals because the trial court's sentencing entry indicated that as part of the agreed-upon sentences, Moore had waived his appellate rights.  *State v. Moore*, 8th Dist. Cuyahoga Nos. 93934 and 93935 (Sept. 21, 2009).

{¶ 9}  In September 2010, Moore filed a "motion to vacate and void sentence" challenging the court's waiver of mandatory fines.  He argued that because no affidavit of indigency was filed prior to sentence, the court erred in waiving the fines; thus, his entire sentence should be void.  The trial court denied his motion.  This court reversed the trial court's decision, but determined that only the waiver of fines was void; the other aspects of Moore's sentence remained intact and resentencing was limited to the imposition of the mandatory fine.  *State v. Moore*, 8th Dist. Cuyahoga Nos. 96111 and 96112, 2011-Ohio-4246, ¶ 18, aff'd *State v. Moore,* 135 Ohio St.3d 151, 2012-Ohio-5479, 985 N.E.2d 432 ("Moore I").

{¶ 10}  A year later in September 2011, Moore filed two motions in CR-525878 — "Presentencing Motion to Withdraw Guilty Plea" and an "Amended Motion Requesting to Withdraw Guilty Plea Prior to Resentencing based on Double Jeopardy."  In October 2011, he filed a

"Motion to Amend Defendant's Timely Presentencing Motion to Withdraw Guilty Plea."  In these motions, Moore maintained that the firearm specifications were the same under both indictments and therefore when he was convicted and sentenced in both cases on the firearm specifications, he was put in jeopardy twice.  Moore also moved to vacate and void his judgment of conviction contending that he should not have been sentenced on the count of possessing criminal tools in CR-521078 because the jury verdict forms indicated that he was found not guilty.

{¶ 11}  On November 8, 2011, the trial court filed two journal entries both under CR-521078.  The first journal entry denied Moore's motion to withdraw his guilty plea reasoning that Moore was "barred by res judicata as the issue before the court could have been raised on direct appeal as it is a sentencing issue."  Under separate journal entry, the trial court also denied Moore's motion to vacate and void his judgment of conviction finding that "no evidence has been presented by the defendant to support his claim that the jury found him not guilty of possession of criminal tools."

{¶ 12}  Moore appealed these decisions under both case numbers.  See *State v. Moore*, 8th Dist. Cuyahoga Nos. 97654 and 97655.  These appeals were subsequently dismissed.  Case number 97655 was dismissed in December 2011 for lack of a final appealable order — "the trial court has not ruled on appellant's motion to vacate.  The appeal is premature."  Case number 97654 was dismissed in February 2012 for failing to file the record.

{¶ 13}  In November 2011, Moore filed another post-judgment motion — "Motion for Acquittal Pursuant to Crim. R. 29(C) after Verdict or Discharge of the Jury" contending that the jury verdict forms were renumbered to his prejudice because Count 7 of the indictment was changed to "Count 6" on the jury verdict forms when in fact, Count 6 of the indictment pertained to a codefendant.

{¶ 14}  The trial court denied his motion for acquittal finding that the jury verdict forms were not renumbered to his prejudice.  Moore appealed that decision.  *State v. Moore,* 8th Dist. Cuyahoga No. 97775, 2012-Ohio-2935.  ("Moore II").  This court found that Moore's appeal was barred by res judicata because he could have raised this issue in his prior appeal in Moore I. *Id.* at ¶ 14.  This court nevertheless addressed the assignment of error and found that Moore's challenge to the jury verdict forms was untimely and the renumbering of the counts in the jury verdict forms were to avoid confusion for the jurors, not to the prejudice Moore.  *Id.* at ¶ 15-17.

12

{¶ 15}  By January 2013, the Ohio Supreme Court had issued its decision affirming this court's decision rendered in Moore I.  The trial court conducted a hearing for the limited purpose of resentencing Moore regarding mandatory fines.  Appointed counsel was present and requested the court to continue the resentencing so that Moore could file the requisite affidavit of indigency and accounting for the purpose of requesting the trial court to waive the mandatory fines.  The trial court agreed and the matter was continued.

{¶ 16}  Subsequently, Moore filed two additional motions — a motion to withdraw his plea and a motion for a hearing to determine allied offenses.  In each motion, Moore contended that his plea was not made knowingly, intelligently, and voluntarily because the offenses he was indicted for under CR-525878 were allied to the offenses he was convicted of in CR-521078 and he was not advised that this violated his right against double jeopardy.

{¶ 17}  At the resentencing in March 2013, the trial court heard arguments from Moore's counsel regarding these pro se motions.  Because the state had not responded to the arguments raised by Moore in his motions, the court continued the matter again for resentencing and for a motion hearing. In the interim, Moore's counsel filed a formal motion to withdraw Moore's plea.

{¶ 18}  Finally, in August 2013, the trial court resentenced Moore for the limited purpose of accepting Moore's affidavit of indigency and waiving the mandatory fines as directed by the Ohio Supreme Court.

{¶ 19}  On this date, the trial court also conducted a hearing on Moore's motion to withdraw his plea.  Moore maintained in his motion that at the time he pleaded guilty, he did not know that the offenses indicted for in CR-525878 were allied offenses and subject to merger with the offenses he was convicted of in CR-521078.  He also moved to withdraw his plea because he was led to believe that he was facing the possibility of an additional 25-years in prison on the second case; thus, he alleged he was induced into entering a plea on CR-525878.  He stated had he known that the offenses in the two cases would have likely merged for sentencing and he would not face any additional time, he never would have entered into the plea, which included waiving his right to appeal.

{¶ 20}  The trial court heard testimony from both Moore and his trial counsel, and also considered oral arguments from both the defense and the state.  The trial court issued a written decision concluding the issue of allied offenses can only be raised on direct appeal and that because Moore waived his appellate rights, Moore's motion was denied.  However, the court stated that even addressing the merits of the motion, Moore did not

demonstrate a manifest injustice as required by Crim. R. 32 to withdraw the plea. The court found that Moore received the benefit of the bargain and was facing a higher sentence if he did not accept the plea agreement. Furthermore, the court noted that trial counsel testified that he did not address the issues of double jeopardy and allied offenses with Moore because in his opinion, those issues did not exist — at the time of the plea, drug trafficking in violation of R.C. 2925.03(A)(1) was not necessarily considered to be an allied offense with drug trafficking in violation of R.C. 2925.03(A)(2) or drug possession in violation of R.C. 2925.11(A). *See State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 29-33.

{¶ 21} Moore now appeals, raising one assignment of error through counsel. Moore raises three additional assignments of error, pro se, after obtaining leave from this court. Some of the assignments of error will be addressed together.

*State v. Moore,* 8th Dist. Cuyahoga Nos. 100483 and 100484, 2014-Ohio-5682, 2014 Ohio App. LEXIS 5503. These state court factual findings are presumed correct unless Moore rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell,* 708 F.3d 760 (6th Cir. 2013).

**B.    Statute of Limitations**

Warden Eppinger moves to dismiss Moore's petition, claiming it is time-barred under 28 U.S.C. § 2244(d)(1). As amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[4] 28 U.S.C. § 2244(d)(1) provides that a person in custody under a judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[4] Pub. L. No. 104-132, -110 Stat. 1214-.

14

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Subsection (A) is regarded as the principal statute of limitations for pursuit of habeas petitions under AEDPA.  Subsections (B), (C) and (D) assign later statute of limitations commencement dates under the specified conditions.

Given Moore's arguments, it is plain that the statute of limitations in 28 U.S.C. § 2244(d)(1)(A) controls.  Under subsection (A), cases become final at the conclusion of direct review when the United States Supreme Court denies a petition for writ of certiorari or time to file a certiorari petition expires.  *Lawrence v. Florida,* 549 U.S. 327, 333 (2007), citing *Clay v. United States,* 537 U.S. 527-528, n.3 (2003).

### 1.      Commencement of Limitation Period

After his trial court convictions became final on August 14, 2009, Moore filed an appeal, which was docketed on September 14, 2009.  ECF Doc. 12-1 at 41.  The Ohio Court of Appeals dismissed the appeal *sua sponte* on September 21, 2009.  According to Ohio S.Ct.Prac.R.7.01(A)(1), Moore had forty-five days within which to appeal that decision to the Ohio Supreme Court.  There is no record of any appeal having been filed.[5]  The AEDPA statute of limitations period began to run on the date on which the time to seek direct review expired: November 5, 2009.  28 U.S.C. § 2244(D)(1)(A).  Moore did not file anything in state court

---

[5] The record indicates Moore moved for reconsideration of the dismissal of his appeal on September 30, 2009, but that motion was denied on October 1, 2009.  The motion for reconsideration had no impact on Moore's deadline to file an Ohio Supreme Court appeal.

thereafter until he filed his filed his Motion to Vacate and Void Sentence (ECF Doc. 12-1 at 55) on September 3, 2010, 302 days after the statute of limitations had commenced running.  Thus, by the time Moore filed that motion, only 63 days of his one-year AEDPA limitations period remained.

Moore's Motion to Vacate and his other post-conviction filings culminated on June 3, 2015, when the Ohio Supreme Court denied Moore's motion to file a delayed appeal related to his final post-conviction petition.  ECF Doc. 12-1 at 321.  Moore did not appeal to the United States Supreme Court.  Moore's AEDPA statute of limitations expired on August 5, 2015, 63 days after the Ohio Supreme Court denied him leave to file a delayed appeal.  Moore did not file his habeas petition until August 10, 2018.  ECF Doc. 1.  Unless saved by the statutory tolling provision in 28 U.S.C. § 2244(d)(2) or other tolling principles, Moore's petition is barred by the AEDPA statute of limitations.  Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000).

Moore has not addressed the issue of his petition's timeliness in either his petition or his traverse.  He has not argued for statutory tolling or claimed that he is actually innocent.  However, because Warden Eppinger argues that statutory tolling does *not* apply, it is briefly addressed below.

## 2.    Statutory Tolling

28 U.S.C. § 2244(d)(2) "provides for statutory tolling of the limitations period during the pendency of properly filed motions for state post-conviction relief, or other collateral review." See *Artuz v. Bennett,* 531 U.S. 4, 8-9 (2000).  "The [statutory] tolling provision does not . . . 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (quoting *Rashid v. Khulmann*,

16

991 F. Supp. 254, 259 (S.D.N.Y. 1998)).  Once the limitations period has expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar.  *Keeling v. Warden, Lebanon Correctional Inst.,*673 F.3d 452, 460 (6th Cir. 2012).

In *Artuz v. Bennett*, 531 U.S. 4, 8 (2000), the United States Supreme Court explained that an application for post-conviction relief in state court is "properly filed" within the meaning of Section 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," such as those prescribing the time limits for filing.  The Sixth Circuit has held that an Ohio prisoner's post-conviction relief application which was dismissed as untimely is not considered "properly filed" and therefore does not toll the limitations period. *Vroman,* 346 F.3d at 603.

Moore was originally sentenced in 2009 and resentenced regarding mandatory fines in 2013.  As discussed above, Moore's post-conviction motions were filed and resolved no later than June 3, 2015.  He has not argued that any post-conviction motions tolled the statute of limitations.  Thus, even if his post-conviction motions had an effect on the AEDPA statute of limitations, the AEDPA statute of limitations still expired before Moore filed his petition.

Warden Eppinger's return argues that Moore's two later-filed civil actions did not toll the statute of limitations because they were not related to the "judgment or claim" that Moore now challenges.  See 28 U.S.C. § 2244(d)(2).  Warden Eppinger contends that the civil actions were not collateral attacks on his judgment but were separate claims brought against the prosecutor and trial judge.  He recognizes that Moore *attempted* to collaterally attack the judgment against him in the two civil cases.  However, because those cases were filed against the prosecutor and the judge, they were not a proper means to collaterally attack Moore's judgment.  Thus, they did not toll AEDPA's statute of limitations.  *See Williams v. Brigano,* 2000 U.S. App. LEXIS 33223

at *4-6 (6th Cir. 2000) (holding that "[a]ttempts to seek relief through avenues that are not available do not meet that requirement.  None of the state proceedings were an application for state post-conviction relief recognized as such under governing state procedures."  Citing *Adeline v. Stinson,* 206 F.3d 249, 252 (2d Cir. 2000)).

I agree with the Warden's argument that Moore's later-filed civil actions against the prosecutor and trial judge did not toll the AEDPA statute of limitations.  More fundamentally, the AEDPA statute of limitations had expired before Moore filed the first of his civil actions on March 4, 2016.  As noted above, statutory tolling cannot serve to revive a statute of limitations that has already expired.  Even if Moore's civil cases were construed to be collateral attacks on his judgment of conviction, they were filed too late to stop the running of his AEDPA limitations period.  Moore's petition was untimely and, unless the limitations period was tolled for equitable reasons, his petition must be dismissed as barred by the AEDPA statute of limitations.

### 3.      Equitable Tolling

AEDPA's statute of limitations may also be tolled on equitable grounds in certain circumstances.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  "Equitable tolling allows courts to review time-barred habeas petitions provided that a litigant's failure to meet the legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452 (6th Cir. 2012) (internal quotation marks omitted).  A habeas petitioner is required to prove he is entitled to equitable tolling.  *See, e.g., McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003).  To do so, the petitioner must show that (1) "he has been pursuing his rights diligently," and (2) that "some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 560 U.S. at 649; *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745 (6th Cir. 2011).  If the court finds the petitioner has

not met either of those requirements, then equitable tolling cannot save an otherwise time-barred habeas claim.

Moore does not argue for equitable tolling. But even if he did, the record demonstrates that he did not diligently pursue his rights. Initially, other than filing a motion for reconsideration of the *sua sponte* dismissal of his direct appeal, he filed nothing in the Ohio Supreme Court in 2009 to seek review of that decision. He commenced a series of challenges to various issues arising from his conviction in 2010, but after the Ohio Supreme Court denied his motion for delayed appeal in 2015, he waited over three years before filing his habeas petition. Perhaps Moore feels that the filing of his two civil cases demonstrates his diligence. Those filings were made after the AEDPA statute of limitations had expired, and they did not directly attack his conviction. I conclude the two lengthy gaps in Moore's pursuit of the matters he now wishes to raise in his habeas petition (from 2009 – 2010 and from 2015 -2018) do not reflect his exercise of diligence in the pursuit of his rights.

Moore would also be required to point to extraordinary circumstances that prevented the timely filing of his habeas petition. Pointing to his *pro se* status and his unawareness of the law would not be enough. *See Lattimore v. DuBois*, 311 F.3d 46, 55 (1st Cir. 2002); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). Here, Moore has not argued for the application of equitable tolling to save his petition. And he has not identified any extraordinary circumstance that prevented its timely filing. The undersigned has no choice but to conclude that this is not a case in which equitable tolling may be applied to permit the review of Moore's habeas claims.

### 4. Actual Innocence

Finally, a sufficient claim of actual innocence can overcome a statute of limitations bar in a habeas case to prevent a fundamental miscarriage of justice. *McQuiggin v. Perkins*, 569 U. S. 383 (2013). The Supreme Court noted, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386 (citing *Schlup v Delo*, 513 U.S. 298, 329 (1995)). This fundamental miscarriage of justice "standard is 'demanding' and seldom met." *Id.* And the standard "applies to a severely confined category: cases in which *new evidence* shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id.* at 395 (emphasis added; citing *Schlup*). The Court concluded by noting: "We stress once again that the *Schlup* standard is demanding. The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.

Moore does not argue that he was actually innocent, and he has not submitted new facts to establish his innocence. Rather, he argues that the trial court erred in accepting his guilty plea, in sentencing him, and that trial counsel did not properly advise him of his rights. Moore's traverse does not even request that he be released from custody.[6] Rather, he requests that

---

[6] Notably, although Moore challenges his conviction under the second-case indictment, he has not challenged his 13-year aggregate sentence from the first case. Because his second-case 9-year aggregate sentence was ordered to be served concurrently with the sentence from the first case, even a determination that Moore was somehow wrongly charged and convicted on the second case would not reduce Moore's time in prison or result in his immediate release from custody.

forfeited money be returned to him and that his sentence be reduced.  ECF Doc. 13 at 12. Because Moore does not claim that he is actually innocent, this is not a case in which the statute of limitations should be tolled.  His petition was filed too late and is barred by AEDPA's statute of limitations.

### C.    Procedural Default

In order to completely address the issues presented, I will now address the other grounds for dismissal raised by Warden Eppinger, such as procedural default.

Before we can reach the merits of a habeas petition, we must determine whether the petitioner satisfied the state procedural requirements for litigating his federal claim in state court. *Bickham v. Winn,* 888 F.3d 248, 250-51 (6th Cir. 2018) (citing *Seymour v. Walker,* 224 F.3d 542, 550 (6th Cir. 2000)).  If he has not satisfied those requirements – and procedurally defaulted his claims – he cannot present the claim in federal court.  *Id.* at 251.  We review de novo whether the petitioner procedurally defaulted his claim.  *Id.*

A petitioner seeking a writ of habeas corpus must comply with two procedural requirements, both grounded in the interests of comity and federalism, before a federal court may review the petitioner's claim.  First, the petitioner must exhaust all available opportunities to pursue his claim in state court before he may litigate that claim in federal court. 28 U.S.C. § 2254(b)(1)(A).  This exhaustion requirement "is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'" *Davila v. Davis,* 137 S. Ct. 2058, 2064, 198 L. Ed. 2d 603 (2017) (quoting *Rose v. Lundy,* 455 U.S. 509, 518, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982)) (alterations in original).  Second, and relatedly, the procedural default doctrine bars our review if the petitioner has not followed the state's procedural requirements for

presenting his claim in state court.  *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  Thus, a federal court will not review a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgment.'"  *Lovins v. Parker,* 712 F.3d 283, 295 (6th Cir. 2013) (quoting *Coleman,* 501 U.S. at 729-30).

Moore's claims are procedurally defaulted for several reasons which are briefly explained below.

### 1. Ground One

Moore's Ground One claims are that his guilty plea was not knowingly and intelligently made, that he received ineffective assistance of counsel, and that the second indictment filed by the state violated the Double Jeopardy Clause.  ECF Doc. 1 at 6.  After Moore pleaded guilty and was sentenced, he filed notices of appeal in both of his cases.  The Ohio Court of Appeals dismissed his appeals because he had waived his appellate rights as part of his plea agreement. ECF Doc. 12-1 at 298.  Moore did not appeal this decision to the Ohio Supreme Court.  Because Moore never appealed this decision to the Ohio Supreme Court, he failed to exhaust his state court remedies to the highest state court and all of his claims are procedurally defaulted.

Much later, in May 2013, Moore filed a motion to withdraw his guilty plea and to vacate the plea agreement.  The trial court denied Moore's motion, finding that it could only be raised on direct appeal.  The Ohio Court of Appeals affirmed the trial court's decision in a journal entry and opinion filed on December 24, 2014.  ECF Doc. 12-1 at 294.  Moore did not timely appeal to the Ohio Supreme Court but filed, in March 2015, a motion to file a delayed appeal.  ECF Doc. 12-1 at 318.  But, the Ohio Supreme Court denied his motion for delayed appeal in an entry filed June 3, 2015.  ECF Doc. 12-1 at 321.

Moore's appeal to the Ohio Supreme Court was untimely and the Ohio Supreme Court enforced its timeliness requirement by denying Moore's motion for a delayed appeal.  In denying the motion for delayed appeal, the Ohio Supreme Court enforced its procedural requirement that an appeal be filed within forty-five (45) days.  Ohio S.Ct.Prac.R. 7.01(A)(1)(a).  The time period for filing an appeal is an adequate and independent state procedural rule and the Ohio Supreme Court enforced the rule.  *See Stone v. Moore,* 644 F.3d 342, 346 (6th Cir. 2011); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Thus, Moore's Ground One claims were procedurally defaulted unless he can show cause and prejudice to excuse his failure to exhaust them in state court.

### 2. Ground Two

Moore's Ground Two claim asserts that the forfeiture judgment was contrary to law. ECF Doc. 1 at 8.  Moore did not raise this issue in his direct appeal or his post-conviction motions.  He attempted to raise the issue in his civil case against the prosecutor in March 2016. ECF Doc. 12-1 at 386.  The trial court dismissed the claim and the court of appeals affirmed finding that the issue was outside the scope of the appeal on the civil case.  ECF Doc. 12-1 at 483.  Moore attempted to appeal to the Ohio Supreme Court, but it declined jurisdiction.  ECF Doc. 12-1 at 507.  However, Moore never *properly* raised this issue on appeal.  Instead, he attempted to raise it in a civil lawsuit years after his conviction.  He was required to exhaust this claim before the highest state court before he could arguably have become eligible to raise it in his habeas petition.[7]  Because he did not, his Ground Two claim, even if arguably cognizable

---

[7] I use the word arguably in this sentence because the Ground Two claim is not one that may be pursued under AEDPA.  28 U.S.C. § 2254(a) allows "a person in custody pursuant to the judgment of a State court" to seek a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Moore is not in custody because of forfeiture judgment, and a claim of error regarding the forfeiture of Moore's property does not raise an issue that the

23

under AEDPA, was procedurally defaulted unless he can show cause and prejudice to excuse his failure to exhaust it in state court.

### 3.  Ground Three

Moore's Ground Three claim asserts that the trial judge became improperly involved with his plea negotiations and incorrectly sentenced him.  Similar to his Ground Two claim, Moore's Ground Three claim was not properly raised on direct appeal or in his post-conviction motions. He attempted to raise this issue in his later-filed civil case against the trial judge.  The trial court dismissed Moore's case on the ground that it was an improper attempt to collaterally attack his criminal conviction.  The Ohio Court of Appeals affirmed the trial court's dismissal, ruling that a declaratory judgment action could not be used as a substitute for an appeal or as a collateral attack upon a conviction.  ECF Doc. 12-1 at 700.  Moore appealed to the Ohio Supreme Court, but it declined to exercise jurisdiction.  ECF Doc. 12-1 at 723.  Despite this attempted collateral attack, Moore never exhausted this claim before the highest state court on direct appeal, and his attempted collateral attack through the filing of a civil lawsuit failed.  His Ground Three claims were procedurally defaulted unless he can show cause and prejudice to excuse his failure to exhaust them in state court.

---

court may consider under AEDPA.  *See* discussion of the merits of Moore's Ground Two claim at p. 39-40 below.

### 4.  Ground Four

Moore's Ground Four claim asserts that the state's second indictment for drug trafficking violated his right against being prosecuted twice for the same crime, i.e. the Double Jeopardy Clause.  Moore pleaded guilty to the charges in the second indictment.  He filed a notice of appeal which was denied because he had waived his appellate rights.  He did not appeal that decision to the Ohio Supreme Court and failed to exhaust his state court remedies.  His Ground Four claim is barred on that basis.

Moore raised this issue in post-conviction motions.  But, the Ohio Court of Appeals noted that it was barred by *res judicata.*  ECF Doc. 12-1 at 307-308.  The Sixth Circuit has repeatedly said that *res judicata* is an adequate and independent state ground to foreclose our review of a petitioner's federal claim.  See, e.g., *Landrum v. Mitchell,* 625 F.3d 905, 934 (6th Cir. 2010).  Thus, as with his other claims, Moore's Ground Four claims were procedurally defaulted unless he can show cause and prejudice to excuse his failure to exhaust them in state court.

### 5.  Exceptions to Procedural Default

Procedural default may be excused on two bases.  First, the petitioner's procedural default may be excused if he shows cause and prejudice, *i.e.* that: (1) something external to the defense, which cannot be fairly attributed to him, prevented him from complying with the state procedural rule; and (2) actual prejudice resulted from the alleged constitutional violation.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  In assessing prejudice, the court assumes that the petitioner has stated a meritorious constitutional claim and proceeds to discern whether a different verdict would have resulted absent the assumed constitutional error.  *Moore v. Carlton*, 74 F.3d 689, 691-92 (6th Cir. 1996); *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003); *see*

*also United States v. Frady*, 456 U.S. 152, 170-72 (1982).  Second, a procedural default may be excused if denying review of the petitioner's claims would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Actual innocence means "factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 623 (1998), and must be supported with "new reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### a.  Cause for Procedural Default

For cause, Moore argues that he just discovered in the year 2017 that he had not waived his appellate rights concerning the second indictment filed against him.  He also argues that his rights were affected by his counsel's ineffective assistance.  Moore's first "cause" - that he did not waive his right to appeal the second indicted case – lacks merit.  The plea transcript states otherwise.  The trial judge asked Moore and he affirmed that he was waiving "any filings to the Court of Appeals."  ECF Doc. 12-1 at 772-774.  Thus, based on what was discussed in his plea hearing, he knew or should have known on August 14, 2009 that he was waiving his appellate rights in both cases.  Moreover, even if he had *not* understood that he could still appeal his guilty plea in either case, his ignorance of the law does not excuse a procedural default.  *See Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004) (petitioner's ignorance of the law and procedural requirements is not enough to constitute cause to excuse procedural default in habeas corpus petition under 28 U.S.C. § 2254).

Nor will Moore prevail on his second argued cause – that his constitutional rights were violated by his counsel's ineffective assistance in failing to tell him that he had not waived his

26

right to appeal on his second case. Like his first cause argument, this one lacks merit. Moore *did* waive his right to appeal when he pleaded guilty to the first count of the second indictment and entered into a plea agreement with the state. ECF Doc. 12-1 at 772-774. And, the Ohio Court of Appeals ruled that Moore's counsel was not ineffective in how he advised Moore of his rights before he pleaded guilty. ECF Doc. 12-1 at 309-313. Counsel was not required to advise Moore of his right to appeal the second case because Moore waived his right to appeal in both cases. And, contrary to Moore's argument, the charges from the second case were not allied offenses with those from the first case. *Id.;* ECF Doc. 12-1 at 772-774. Because Moore has not established cause for his procedural default, this Court need not address whether he was actually prejudiced. *Simpson v. Jones,* 238 F.3d 399, 409 (6th Cir. 2000). However, because his claims lack merit, as further explained below, Moore is also unable to show that he was prejudiced by the procedural default of his claims.

**b.  Actual Innocence**

A federal court may review a procedurally defaulted claim, even in the absence of a demonstration of cause and prejudice, to correct "a fundamental miscarriage of justice," as when the petitioner is actually innocent. *Coleman v. Thompson,* 501 U.S. 722, 748, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)). It is well-established that "'[a]ctual innocence' means factual innocence, not mere legal insufficiency." *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). For a petitioner to establish "actual innocence," that petitioner must present new evidence to the habeas court. *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. Ohio 2003). This "new evidence [will] not rise to the standard of establishing his actual innocence [if] a reasonable juror still

27

could have found [petitioner] guilty [beyond a reasonable doubt] even after considering [the] new evidence." *Jells v. Mitchell,* 538 F.3d 478, 507 (6th Cir. 2008).  New evidence cannot excuse procedural default except when that evidence is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Sellers v. Ward,* 135 F.3d 1333, 1338 (10th Cir. 1998) (citing *Schlup v. Delo,* 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).  New evidence, consequently, can only excuse procedural default in "extraordinary" cases.  *Carter,* 443 F.3d at 538.

Here, Moore has not argued that he is innocent.  Nor has he presented any new evidence to establish his actual innocence.  Because Moore's claims are procedurally defaulted and he has not demonstrated cause and prejudice to excuse the default nor argued his actual innocence, I recommend that his claims be dismissed as procedurally defaulted.

As already explained, Moore's claims are barred by AEDPA's statute of limitation and are procedurally defaulted.  However, in order to be of greatest assistance to the Court, I will proceed to analyze below the merits and/or cognizability of Moore's claims.  Federal courts considering habeas petitions are permitted to address the merits before reaching a final conclusion on procedural default.  *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir. 2003); *Bates v. Bell,* 788 F.3d 568, 573 (6th Cir. 2015).

**D.    Merits Review**

**1.    AEDPA Standard**

As discussed above, a state prisoner's claims for habeas corpus relief are governed by AEDPA, which amended the habeas corpus statute by including a standard of review that gives significant deference to the decisions made by the state courts on the federal constitutional issues

raised in a habeas corpus petition.  *See Penry v. Johnson*, 532 U.S. 782, 791, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008).  AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279, (2002) (per curiam).

When the claim presented in a habeas corpus petition *has* been presented to and decided on the merits by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that" [t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one."  To obtain habeas corpus relief, a petitioner must show the state court's decision was not only legally wrong but also "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement."  *Bobby v. Dixon*, 565 U.S. 23, 24, 132 S. Ct. 26,

181 L. Ed. 2d 328 (2011), quoting *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178

L. Ed. 2d 624 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against

extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error

correction through appeal." *Harrington v. Richter*, 562 U.S. at 102-103 (quoting *Jackson v.

Virginia*, 443 U.S. 307, 332, n. 50, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J.,

concurring in judgment)).  In short,"[a] state court's determination that a claim lacks merit

precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

of the state court's decision." *Id.*, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct.

2140, 158 L. Ed. 2d 938 (2004). "The question under AEDPA is not whether a federal court

believes the state court's determination was incorrect but whether that determination was

unreasonable – a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473, 127

S.Ct. 1933, 167 L.Ed.2d 836 (2007).

### 2.    Ground One

Moore's Ground One claim asserts that his guilty plea was not knowing and intelligent;

that he received ineffective assistance of counsel; and that he was subjected to double jeopardy

when the state filed a second indictment in violation of the Fifth Amendment to the United States

Constitution.  ECF Doc. 1 at 6.  "Generally, a voluntary and unconditional guilty plea 'bars any

subsequent non-jurisdictional attack on the conviction.'"  *United States v. Corp*, 668 F.3d 379,

384 (6th Cir.2012) (internal quotations omitted).  This is so because, normally:

> [A] guilty plea represents a break in the chain of events which has preceded it in
> the criminal process.  When a criminal defendant has solemnly admitted in open
> court that he is in fact guilty of the offense with which he is charged, he may not
> thereafter raise independent claims relating to the deprivation of constitutional
> rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).  "Thus, after the entry of an unconditional plea, a defendant may only attack the court's jurisdiction and the voluntary and intelligent character of the plea itself.[8]"  *Werth v. Bell,* 692 F.3d 486 (6th Cir. 2012).  "[G]uilty pleas 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'"  *Ruelas v. Wolfenbarger,* 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).  The validity of the plea must be determined from the "totality of the circumstances."  *Abdus-Samad v. Bell,* 420 F.3d 614, 631 (6th Cir. 2005) (citing *Brady,* 397 U.S. 747).

When a habeas petitioner challenges the validity of his plea, "the state generally satisfies its burden [to show that the plea was voluntary and intelligent] by producing a transcript of the state court proceeding."  *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir. 1993).  "Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L. Ed. 2d 136 (1977).  The state court's factual finding that the plea was proper is accorded a presumption of correctness unless the transcript is inadequate to show that the plea was voluntary and intelligent.  *Garcia,* 991 F.2d at 326-3 27; see U.S.C. § 2254 (e)(1).  Under *Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), the petitioner must overcome a heavy burden if a federal habeas court is to overturn a state court finding that he made a knowing and voluntary plea.  Here, respondent filed the transcript of the plea hearing and it shows that Moore's guilty plea was made knowingly and voluntarily.

---

[8] Also, guilty pleas may not prevent a defendant's ability to challenge whether the government has the power to "constitutionally prosecute" him.  *Class v. United States,* 138 S. Ct. 798, 200 L. Ed. 2d 37 (2018).  However, this exception is not applicable to the claims raised in Moore's petition.

In considering whether Moore's guilty plea was knowing and intelligent, the Ohio Court of Appeals held:

II. Withdraw of Plea

{¶22}  In the assignment of error raised by counsel, Moore contends that his "guilty plea was neither knowing nor intelligent because it was prompted by misinformation about the applicable law and the proper sentence that could be imposed."

{¶23}  Crim. R. 32.1 authorizes the postconviction withdrawal of a plea only to correct a manifest injustice.  *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715 (1992).  The defendant bears the burden of proving manifest injustice.  *Id.*  A defendant can only establish a manifest injustice in "extraordinary cases."  *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus.  "'A manifest injustice has been defined by the Ohio Supreme Court as a "clear or openly unjust act."'"  *State v. Sage*, 2d Dist. Montgomery No. 25453, 2013-Ohio-3048, ¶ 16, quoting *State v. Moore,* 2d Dist. Montgomery No. 24387, 2011-Ohio-4546, ¶ 9, quoting *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 1998 Ohio 271, 699 N.E.2d 83 (1998).  "Although Crim. R. 32.1 does not prescribe a time limitation, an 'undue delay between the occurrence of the alleged cause for withdrawal of the guilty plea and the filing of a motion under Crim. R. 32.1 is a factor adversely affecting the credibility of the movant and militating against granting of the motion.'"  *Stage v. Nooks*, 10th Dist. Franklin No. 10AP-108, 2010-Ohio-2982, ¶ 6, quoting *Smith* at paragraph three of the syllabus.  The determination of whether the defendant has sustained his burden is committed to the sound discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion.  *State v. Caver,* 8th Dist. Cuyahoga Nos. 90945 and 90946, 2008-Ohio-6155, citing *Smith* at paragraph two of the syllabus.

{¶24}  Reviewing the motion to withdraw filed with the trial court, the transcript of the proceedings, and the brief on appeal, Moore appears to challenge that he was denied effective assistance of counsel at the time of the plea in 2009.  Moore contends that he was induced into entering into the plea agreement based on his trial counsel's failure to correctly advise him regarding the penalty he was facing under the second indictment.

{¶25}  Moore maintains that at the time he pleaded guilty, he did not know that the offenses he allegedly committed on February 13, 2009 — both charged in CR-521078 and 525878 — were allied offenses; thus, under the Double Jeopardy Clauses of the State and Federal Constitutions, and the law in the state of Ohio, the state is barred from obtaining convictions on at least two of the three charges in the second indictment as well as the firearm specifications related to all three charges. He argues that had he been correctly advised of the Double Jeopardy and allied offense implications of the second indictment — that drug possession and at

least one of the drug trafficking counts were allied in the first indictment — he would have never pled guilty in CR-525878 and forfeited his right to a direct appeal in CR-521078.

{¶26}  Ineffective assistance of counsel is a proper basis for seeking a postsentence withdrawal of a guilty plea.  *State v. Mays*, 174 Ohio App.3d 681, 2008-Ohio-128, 884 N.E.2d 607, ¶ 8 (8th Dist.), citing *State v. Dalton*, 153 Ohio App.3d 286, 2003-Ohio-3813, 793 N.E.2d 509, ¶ 18 (10th Dist.).  When an alleged error underlying a motion to withdraw a guilty plea is the ineffective assistance of counsel the defendant is required to demonstrate that (1) his counsel's performance was seriously flawed and deficient and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty.  *Strickland v. Washington,* 466 U.S. 668, 687-688, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984); *Xie*, 62 Ohio St.3d at 524, 584 N.E.2d 715.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland* at 690.

 {¶27}  After reviewing the pertinent law at the time of Moore's plea and the transcript of the proceedings, we conclude that the trial court did not abuse its discretion in denying Moore's motion to withdraw because (1) Moore's motion is arguably barred by res judicata, (2) Moore is attempting to appeal an agreed sentence, and (3) Moore has not demonstrated that counsel was deficient; thus, unable to satisfy his burden of demonstrating that a manifest injustice has occurred.

A. Res Judicata

{¶28}  The trial court did not abuse its discretion in denying Moore's motion to withdraw his plea because the motion is arguably barred by res judicata.  "Res judicata prevents repeated attacks on a final judgment and applies to all issues that were or might have been litigated."  *State v. Sneed,* 8th Dist. Cuyahoga No. 84964, 2005-Ohio-1865, ¶ 16, citing *State v. Brown*, 8th Dist. Cuyahoga No. 84322, 2004-Ohio-6421.

{¶29}  Moore waived his appeal rights in these cases regarding issues pertaining to discovery, suppression, and trial.  Nothing precluded Moore from filing an appeal challenging whether he knowingly, voluntarily, and intelligently entered into the plea agreement in 2009.  Although we recognize that this court dismissed his direct appeal, the appeal should have only been dismissed insofar as it challenged any pretrial or trial issues.

{¶30}  Furthermore, res judicata would also prohibit Moore's appeal because this is an appeal from his fifth motion to either withdraw his plea or vacate a void sentence.  "'The doctrine of res judicata is applicable to successive motions to withdraw a guilty plea under Crim.R. 32.1.'"  *State v. Steinke,* 8th Dist. Cuyahoga

No. 100345, 2014-Ohio-2059, ¶ 20, quoting *State v. Muhumed*, 10th Dist. Franklin No. 11AP-1001, 2012-Ohio-6155, ¶ 13.

{¶31} Moore challenged the trial court's imposition of court costs in 2010, but did not make any argument challenging his plea. Again, in 2011, he filed multiple motions seeking to withdraw his plea and vacate his sentence. Because we recognize that the appeal from the November 8, 2011 journal entry denying his motion to withdraw his plea was possibly dismissed erroneously, this court will not use the doctrine of res judicata to bar Moore's appeal in this matter. *See, e.g., State v. Holmes*, 8th Dist. Cuyahoga No. 100388, 2014-Ohio-3816, ¶ 23, citing *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶ 25-27. However, other reasons exist which require this court to affirm the trial court's decision denying his motion to withdraw his plea.

B. Agreed Sentence

{¶32} The underlying basis for which Moore requests his plea to be withdrawn is that the offenses contained in CR-525878 are allied offenses with the offenses contained in CR-521078. Moore contends, therefore, that he was not facing any additional sentence and the misinformation about the potential additional 25-year jail sentence for the second indictment induced him into taking the plea, which included waiving his appellate rights.

{¶33} The record demonstrates that the trial court expressly addressed this issue with Moore at the beginning of the plea colloquy. See tr. 1614-1616. In fact, the court advised Moore prior to the trial that if he was convicted of all charges in both cases, he faced a minimum of 18 years. (Tr. 12-18.)

{¶34} Even if the offenses were allied, R.C. 2953.08(D) forecloses review of the actual sentence imposed by the trial court pursuant to an agreed sentence upon entering a plea of guilty. This court and other districts have concluded that agreed sentences, even those containing allied offense issues, are not appealable. *See State v. Stansell,* 8th Dist. Cuyahoga No. 75889, 2000 Ohio App. LEXIS 1726, *12-13 (Apr. 20, 2000). Therefore, Moore could not have appealed his sentence, raising these allied offense issues because it was an agreed sentence. The effect of the agreed sentence also overrules Moore's first pro se assignment of error challenging the court's discretion in sentencing him on duplicitous indictments that violate the double jeopardy clause.

C. Deficient Performance/Manifest Injustice

{¶35} Reaching the merits of the assignment of error, we find that the trial court did not abuse its discretion in denying Moore's postconviction motion to withdraw his plea. Moore has not demonstrated that his trial counsel was

34

seriously flawed or deficient in failing to address double jeopardy and allied
offense issues regarding the second indictment sufficient to withstand his burden
of proving that a manifest injustice occurred.

{¶36}  The Double Jeopardy Clause is promulgated under the Fifth Amendment
to the United States Constitution and Article I, Section 10 of the Ohio
Constitution and it "protect[s] a defendant from successive prosecutions and
multiple punishments for the same offense."  *State v. Mullins*, 5th Dist. Fairfield
No. 12 CA 17, 2013-Ohio-1826, ¶ 12, citing *State v. Kelly,* 7th Dist. Columbiana
No. 08 CO 23, 2009-Ohio-1509, ¶ 18.

> "[T]he successive prosecution branch of the Double Jeopardy Clause
> prohibits the state from trying a defendant for a greater offense after a
> conviction of a lesser included offense and from twice trying a defendant
> for the same offense."  *State v. Morton,* Montgomery App. No. 20358,
> 2005-Ohio-308, ¶ 8 (internal quotations and additional citations omitted).
> In comparison, "[u]nder the 'cumulative punishment' prong, double
> jeopardy protections do 'no more than prevent the sentencing court from
> prescribing greater punishment than the legislature intended.'"  *State v.
> Coe,* Stark App. No. 2009 CA 00050, 2010-Ohio-1840, ¶ 109, quoting
> *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L. Ed.2d 535
> (1983).

> *Mullins* at ¶ 12.

{¶37}  In this case, Moore contends that the second indictment falls under both
prongs of the double jeopardy clause; thus, trial counsel was deficient for failing
to explain, address, or argue these issues before the trial court.  According to
Moore, had trial counsel advised him properly that the second indictment may not
have subjected him to any additional sentence, he would not have entered into the
plea agreement and agreed sentence.

{¶38}  First, we must determine whether the second indictment violated his right
against successive prosecutions.  "To determine whether a subsequent prosecution
is barred by the Double Jeopardy Clause of the Fifth Amendment, a court must
first apply the *Blockburger [v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L.
Ed. 306] test."  *State v. Tolbert,* 60 Ohio St.3d 89, 573 N.E.2d 617 (1991).  "The
applicable rule is that where the same act or transaction constitutes a violation of
two distinct statutory provisions, the test to be applied to determine whether there
are two offenses or only one, is whether each provision requires proof of a fact
which the other does not."  *Blockburger* at 304.  "If the application of the test
reveals that the offenses have identical statutory elements or that one is a lesser
included offense of the other, the subsequent prosecution is barred."  *Tolbert* at
paragraph one of the syllabus.

{¶39} In support of his argument that the second indictment was barred, Moore relies on *State v. Edwards,* 8th Dist. Cuyahoga Nos. 94568 and 94929, 2011-Ohio-95, and *Rashad v. Burt*, 108 F.3d 677 (6th Cir.1997), where the courts found that the double jeopardy clause prohibiting successive prosecutions barred the prosecutions in subsequent indictments.

{¶40} In *Rashad*, the defendant was prosecuted for possession with intent to deliver cocaine found in his automobile after he had been convicted for possession with intent to distribute cocaine found in his house; both convictions stemmed from the execution of a single search warrant. *Id.* at 678. Similarly, in *Edwards*, the defendants were charged with drug trafficking, drug possession, and possession of criminal tools based on a search of one defendant's car. After the defendants had entered into a plea and were sentenced, a new indictment was filed based on additional drugs that were subsequently located in the car. This court held that the defendants in *Edwards* had a sense of finality when they entered into their plea.

{¶41} In this case, and unlike *Edwards* and *Rashad*, both indictments were pending prior to trial commencing. The parties, including Moore, were well aware of the facts and circumstances surrounding each indictment. Therefore, there was no sense of finality after Moore was found guilty of the first indictment. Furthermore, and as explained by Moore's trial counsel, the two events did not stem from one search warrant or arrest, but rather different events involving different offenses, drug amounts, and locations.

{¶42} Applying the *Blockburger* test, the second indictment charged Moore with drug trafficking in violation of R.C. 2925.03(A)(1), whereas he was charged under the first indictment with drug trafficking in violation of R.C. 2925.03(A)(2). The former requires it to be proven that the offender intends to sell the controlled substance, whereas trafficking under R.C. 2925.03(A)(2) does not. According to the *Blockburger* "same elements" test, Moore's right against successive prosecutions was not violated.

{¶43} Regarding the multiple punishment prong of the Double Jeopardy Clause, Moore relies on *State v. Johnson,* 128 Ohio St.3d 153, 161-162, 2010-Ohio-6314, 942 N.E.2d 1061, in maintaining that the drug trafficking offenses in CR-525878 are allied with the drug trafficking and possession offenses in CR-521078. However, *State v. Cabrales,* 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, governed allied offenses at the time these offenses occurred and at the time of the plea and sentencing.

{¶44} Under *Cabrales*, the Ohio Supreme Court relaxed the previous standard by providing that "[i]nstead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." *Id.* at ¶ 26. In *Cabrales*, the Ohio Supreme Court expressly

addressed those offenses that Moore claims are allied in his case.  The court held that drug trafficking in violation of R.C. 2925.03(A)(1) was not necessarily allied with drug trafficking in violation of R.C. 2925.03(A)(2), and that drug trafficking under the (A)(1) section was not necessarily allied with drug possession in violation of R.C. 2925.11(A).  *Id.* at ¶ 29-33.  Accordingly, Moore's offenses were not allied offenses under *Cabrales*.

{¶45}  Trial counsel testified that he did not discuss the issue of allied offenses or double jeopardy with Moore because he did not think an issue existed and that the two offenses were not subject to merger because, as he explained,

> We did not discuss double jeopardy. We did not discuss allied offenses. After careful analysis of the facts that I knew of the case, about the first and the second case, given the separate dates, separate times, separate amounts, separate witnesses, it was my analysis that those were separate incidents and they did not qualify for merger, so I did not have that discussion.

> (Tr. 1709-1710.)

{¶46}  Trial counsel testified that he had approximately 23-years experience as an attorney and primarily represented individuals charged with drug-related offenses. Given counsel's experience and explanation regarding why he did not believe the offenses were subject to merger, considering his knowledge of the law as it existed at the time, counsel's performance was not deficient.  Counsel was well aware of the effect of allied offenses and merger because various counts in CR-521078 were merged for sentencing.  Finally, *Cabrales* would have prevented the trial court from merging the drug trafficking offense in CR-525878 with any of the other offenses in CR-521078.  Based on the foregoing, Moore has not demonstrated that his trial counsel was deficient.

{¶47}  Moreover, Moore has failed to meet his burden of demonstrating that a manifest injustice occurred.  Moore entered into an agreed sentence after being found guilty by a jury of two counts of drug trafficking, drug possession, and one count of possessing criminal tools, with each count containing firearm specifications.  Moore was facing over 16 years in prison under this indictment alone.  The fact that he received an agreed 13-year sentence under both cases demonstrates that Moore received the benefit of the bargain.

{¶48}  Based on the foregoing reasons, including the delay in alleging that trial counsel was deficient, the trial court did not abuse its discretion in denying Moore's motion to withdraw his plea based on a claim of ineffective assistance of counsel.  Accordingly, Moore's assignment of error raised by counsel and his first assignment of error raised pro se are overruled.

*State v. Moore,* 8th Dist. Nos. 100483 and 100484, 2014-Ohio-5682.  The state court's factual finding that the plea was proper is accorded a presumption of correctness unless the transcript is inadequate to show that the plea was voluntary and intelligent.  *Garcia,* 991 F.2d at 326-327; see U.S.C. § 2254 (e)(1).

Moore's Ground One claims rest on a faulty foundation: that the charges from his second indictment were allied offenses with those from his first case.  However, under Ohio law, the charges in Moore's second case were *not* allied offenses to the charges from his first case.  [C]ourts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance — in other words, did each offense cause separate, identifiable harm? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?  "An affirmative answer to any of the above will permit separate convictions.  The conduct, the animus, and the import must all be considered."  *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.  Here, the charges in the first and second indictments involved separate dates, separate times, separate amounts and separate witnesses.  *State v. Moore,* 8th Dist. Nos. 100483 and 100484, 2014-Ohio-5682, ¶ 45.  There was nothing improper about the state separately charging Moore for different offenses.

Once the faultiness of Moore's foundational argument is recognized, the rest of his Ground One arguments fail as well.  His attorney did not give him ineffective assistance by failing to inform him that the charges were allied offenses, because they weren't.  His guilty plea was not made without knowledge, because "knowledge" that the offenses were allied would have been wrong.  No manifest injustice occurred because it does not appear that anything improper took place during the plea colloquy or in the trial court's acceptance of the plea agreement.  Moore's Ground One claims lack merit.

Moreover, Moore's Ground One claim is not cognizable on habeas review because, in determining that Moore's offenses were not allied, the state court of appeals interpreted and applied Ohio law.  A claim that only alleges violations of state law is not cognizable in a federal habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violates a federal constitutional right.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").  And, in this context, the Double Jeopardy Clause does no more than prevent a sentencing court from prescribing greater punishment than the legislature intended.  *Jones v. Thomas*, 491 U.S. 376, 380-381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989).  Thus, the state court's decision on allied offenses interpreted only Ohio law and did not implicate the Double Jeopardy Clause.

Moore does not cite any U.S. Supreme Court case in support of his Ground One claims, likely because no such cases exist.  Because I cannot find that the state court decision was contrary to or an unreasonable application of Supreme Court precedent, I recommend that it be dismissed for lack of merit.

### 3.    Ground Two

Moore's Ground Two claim asserts that the trial court's forfeiture judgment was contrary to law because Moore did not sign a plea agreement and the trial court did not hold a forfeiture hearing within 30 days of the plea agreement.  ECF Doc. 1 at 8.  Warden Eppinger argues that Moore's Ground Two claim is not cognizable on habeas review.  I agree.  Under § 2254, subject matter jurisdiction exists "only for claims that a person 'is in custody in violation of the

Constitution or laws or treaties of the United States.'" *Washington v. McQuiggin,* 529 F. App'x 766, 772-773 (6th Cir. 2013), quoting *Dickerson v. United States,* 530 U.S. 428, 439 n.3, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000) (quoting 28 U.S.C. § 2254(a)).  In general, fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the "in custody" requirement of a cognizable habeas claim.  *See United States v. Watroba*, 56 F.3d 28 (6th Cir. 1995) (holding that § 2255 does not grant subject matter jurisdiction over restitution orders);  *Michaels v. Hackel*, 491 F. App'x 670, 671 (6th Cir. 2012) (stating that a fine is not cognizable under § 2254 and citing *Watroba,* 56 F.3d at 29); *see also Bailey v. Hill*, 599 F.3d 976, 979 (9th Cir. 2010) (holding that fines and restitution orders are not cognizable under § 2254); *Washington v. Smith*, 564 F.3d 1350, 1350-51 (7th Cir. 2009) (same); *Tinder v. Paula,* 725 F.2d 801, 804 (1st Cir. 1984) (collecting cases); Randy Hertz & James S. Liebman, 1 Federal Habeas Corpus Practice and Procedure § 8.2(e) (6th ed. 2012).  Further, "collateral relief from a noncustodial punishment, such as a fine or restitution order, is not made readily available to a defendant just because he happens at that time to also be subject to custodial penalties." Brian R. Means, Federal Habeas Manual § 1:21 (2012 ed.).  Although the question of whether a claim satisfies the "in custody" requirement is to some extent one of degree, *Nelson v. Campbell,* 541 U.S. 637, 646, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004), a fee-repayment order falls outside of even "the margins of habeas," *id.*, because it is "not a serious restraint on . . . liberty as to warrant habeas relief." *Tinder,* 725 F.2d at 805; *Bailey,* 599 F.3d at 979 (quoting *Tinder*). Because Moore's Ground Two claim does not challenge a state court action leading to him being held in custody, this court lacks subject matter jurisdiction to consider it.  I recommend that Moore's Ground Two claim be dismissed on that basis.

### 4.    Ground Three

Moore's Ground Three claim asserts that the thirteen-year sentence imposed against him was contrary to law because the trial judge combined the sentences from the two cases and became involved in the plea agreement between Moore and the state.  Warden Eppinger argues that this claim lacks merit.

Normally, a challenge to state court sentencing decisions does not raise a cognizable federal constitutional claim that can be considered in a federal habeas case.  *See e.g. Sneed v. Donahue,* 993 F.2d 1939, 1244 (6th Cir. 1993).  A claim that only alleges violations of state law is not cognizable in a federal habeas case, and it must be dismissed on that basis unless the state court's state-law ruling violates a federal constitutional right.  *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

The Ohio Court of Appeals held that the trial court had not improperly sentenced Moore and that the charges were not allied offenses.

> {¶41}  * * *  both indictments were pending prior to trial commencing.  The parties, including Moore, were well aware of the facts and circumstances surrounding each indictment.  Therefore, there was no sense of finality after Moore was found guilty of the first indictment.  Furthermore, and as explained by Moore's trial counsel, the two events did not stem from one search warrant or arrest, but rather different events involving different offenses, drug amounts, and locations.

41

*State v. Moore,* 8th Dist. Nos. 100483 and 100484, 2014-Ohio-5682. Moore has not cited any U.S. Supreme Court precedent suggesting that the state court decision violated his federal constitutional rights.

Finally, there is no factual support for Moore's argument that the trial judge became impermissibly involved in his plea agreement with the state. As previously noted, Warden Eppinger submitted the transcript from Moore's plea hearing, which does not support his argument. The trial court's sentence appears to be a proper application of state law. Moore's Ground Three claim is not cognizable on habeas review. Moreover, because there is nothing to suggest that the state court sentencing decision or the Ohio Court of Appeals' affirmance thereof, was contrary to or an unreasonable application of Supreme Court precedent, I recommend that Moore's Ground Three claim be dismissed for lack of merit.

### 5. Ground Four

Moore's Ground Four claim argues that the state's second indictment violated his rights under the Double Jeopardy Clause of the Fifth Amendment because he had already been convicted of drug trafficking in the first indictment. He also argues that his attorney was ineffective in failing to move for dismissal of the second indictment on this basis. These claims are similar to those presented in Ground One. The Ohio Court of Appeals applied the proper tests under *Strickland v. Washington,* 466 U.S. 668, 687-688, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984) and *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 and determined that Moore had not been subjected to double jeopardy when the state filed the second indictment. *State v. Moore,* 8th Dist. Nos. 100483 and 100484, 2014-Ohio-5682, ¶ 38. The Ohio Court of Appeals also determined that Moore's trial counsel was not deficient for failing to move

to dismiss the second indictment.  Clearly, if Moore's underlying reason for seeking a dismissal was invalid, as it was here, his counsel was not deficient in failing to take such action.

Furthermore, even if I disagreed with the state court's decision, I could not say that it involved an unreasonable application of clearly established Supreme Court precedent.  A decision is unreasonable only if it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any reasonable possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  This court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington*, 562 U.S. at 102; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of that decision."  *Harrington*, 526 U.S. at 88 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  This standard is intentionally "difficult to meet," because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Harrington*, 526 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 322 n.5 (1979)).  As with his other claims, Moore's Ground Four claim does not cite any misapplication of Supreme Court precedent.

Because I cannot find that any state court decision was contrary to or an unreasonable application of clearly established federal law as announced in Supreme Court precedent, the

Ground Four claim also lacks merit. I recommend Moore's Ground Four claim be dismissed for lack of merit.

## V.      Recommendation Regarding Certificate of Appealability

### A.      Legal Standard

As amended by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483-484 (2000). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. §

2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  Analysis

Moore's claims are barred by AEDPA's statute of limitations.  They were also procedurally defaulted because he did not raise them in his direct appeal to the Ohio Supreme Court and he has not shown either cause or prejudice to excuse the default.  All of his habeas claims are noncognizable and/or lack merit, as explained above.  Moore has not shown any unreasonable applications of federal law or any unreasonable determinations of facts.  Habeas relief is not available for the issues identified in his petition.  This would not be debatable among jurists of reason, and I recommend that no certificate of appealability issue in this case.

## VI.    Recommendations

Because all of Moore's claims are barred by AEDPA's statute of limitations, were procedurally defaulted and lack merit or raise only noncognizable issues, I recommend that the Court DISMISS Moore's claims and DENY his petition for writ of habeas corpus under 28 U.S.C. § 2254.  I further recommend that he not be granted a certificate of appealability.

Dated: January 13, 2020

Thomas M. Parker
United States Magistrate Judge

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).